E-FILED
Monday, 19 April, 2021  04:51:31 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Calvin Grissom, | |
| Plaintiff, | |
| | No. 19-cv-2106 |
| v. | |
| Lake Land College, et al., | |
| Defendants. | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant CHRISTOPHER WILLIAMS, by and through his attorneys, Frank B. Garrett III and Jessica A. Milligan of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., hereby submits Defendant's Motion for Summary Judgment. In support thereof, Defendant Williams states as follows:

### I.      INTRODUCTION

Plaintiff Calvin Grissom ("Plaintiff") is a former inmate of the Hill Correctional Center, an Illinois Department of Corrections ("IDOC") facility in Galesburg, Illinois. In June 2015, Plaintiff enrolled in the Associate Degree Program administered by IDOC through Lake Land College (the "College"). About one month later, on July 27, 2015, the College hired Defendant Christopher Williams ("Defendant Williams") as the Associate Dean of Correctional Programs at the Hill Correctional Center.

In October 2015, Plaintiff voluntarily dropped a course mid-semester. In accordance with IDOC Directives and Hill Correctional Center Rules, Plaintiff was suspended from all IDOC school assignments for six months, from November 2015 through May 2016. On June 1, 2016, Defendant Williams issued Plaintiff a letter stating his six-month suspension had expired and he would be called back to register for the

upcoming school semester. Plaintiff reenrolled in the College's Associate Degree Program shortly thereafter.

In August 2016, Defendant Williams learned that Plaintiff previously obtained an Associate in General Studies Degree from Kaskaskia Community College. IDOC and College Rules preclude any student from enrolling in an educational program if the student has already met the educational goals of that program. Defendant Williams' supervisor, Dean of Correctional Programs North Jennifer Billingsley ("Dean Billingsley"), directed Defendant Williams to notify Plaintiff that he would be removed from the Associate Degree Program. On August 28, 2016, Defendant Williams met with Plaintiff and informed him that he would be removed from the Associate Degree Program because he already had an Associate in General Studies Degree.

Plaintiff later expressed interest in automotive technology courses, which the College planned to begin offering through its vocational program at the Hill Correctional Center. Defendant Williams agreed that Plaintiff would be in the first class of students enrolled in automotive technology courses. In October 2018, however, Plaintiff transferred to another correctional facility before the automotive technology program began.

On March 28, 2019, Plaintiff filed a complaint against the College, its President Dr. Jonathon Bullock, and Defendant Williams alleging that his November 2015 six-month suspension violated various contract and constitutional rights. Pursuant to this Court's March 9, 2020 dismissal order, only Plaintiff's First Amendment retaliation allegations against Defendant Williams remain. To support this claim, Plaintiff now alleges he sent a request slip and two letters to the Hill Correctional Center Warden regarding his six-month suspension from IDOC school assignments. Plaintiff alleges Defendant Williams

retaliated against him for sending the request slip and letters by: (1) removing him from the Associate Degree Program on August 26, 2016; (2) issuing him a disciplinary ticket on October 13, 2016; and (3) denying him enrollment in educational and vocational programs from August 26, 2016, to October 21, 2018.

Plaintiff's claims should be dismissed for several reasons. First, Plaintiff failed to exhaust his administrative remedies. Plaintiff admits he did not grieve the October 13, 2016 disciplinary ticket. Plaintiff also admits he did not grieve any of his alleged attempts to enroll in educational or vocational courses from August 26, 2016, to October 21, 2018. On August 31, 2016, Plaintiff filed a grievance requesting an explanation for his removal from the Associate Degree Program, however this grievance did not mention his alleged request slip or letters to the Warden, nor did it allege that his removal was in retaliation for any protected activity. Accordingly, Plaintiff's claims should be dismissed for failure to exhaust administrative remedies in the IDOC grievance procedure.

Even if Plaintiff had exhausted his administrative remedies, there is no genuine issue of material fact to support his First Amendment retaliation claims. Plaintiff has provided no evidence of a causal connection between Defendant Williams' actions and any alleged protected activity. In fact, the evidence shows that Defendant Williams did not take many of the adverse actions alleged. It is clear that Dean Billingsley, not Defendant Williams, determined Plaintiff should be removed from the Associate Degree Program after learning Plaintiff already had an Associate in General Studies Degree. In addition, Plaintiff admits that Defendant Williams agreed to enroll him in the first class of vocational students in the automotive technology program. Finally, Plaintiff admits to the misconduct for which he was cited in the October 13, 2016 disciplinary ticket.

For these reasons, no reasonable jury could find that Defendant Williams retaliated against Plaintiff based on any First Amendment protected activity. Defendant Williams therefore requests that this Court dismiss Plaintiff's claims in their entirety and grant summary judgment in Defendant Williams' favor.

## II.  <u>DOCUMENTS</u>

The following pleadings and documents are referenced in this Statement of Undisputed Material Facts and attached as indicated:

<u>Exhibit</u>  <u>Description</u>

A.  Plaintiff's Complaint

B.  Defendant's Answer to the Complaint and Affirmative Defenses

C.  Plaintiff's Responses to Defendant's Interrogatories

D.  Plaintiff's Responses to Defendant's Document Requests

E.  Deposition Transcript of Plaintiff Calvin Grissom

F.  Affidavit of Christopher Williams

G.  Affidavit of Jennifer Billingsley

H.  Associate Dean Job Description

I.  20 Ill. Admin. Code Sections 504.12 and 504.30

J.  IDOC Directive 04.10.108

K.  Lake Land College School Rules

L.  Hill Correctional Center School Manual

M.  January 6, 2016 Email from Billingsley to Associate Deans

N.  January 7, 2016 Removal Memorandum to Dixon Student

O.  IDOC Procedure 08.800

P.  IDOC Notification of Educational Reimbursement Requirement

Q.  Hill Correctional Center Academic Rules for School/Library

R.        Lake Land College/Hill Correctional Center Exit Interview

S.        December 2, 2015 Suspension Memorandum to Plaintiff

T.        May 27, 2016 Email from Frost to Defendant Williams

U.        May 27, 2016 Counseling Summary

V.        June 1, 2016 Reinstatement Letter from Defendant Williams

W.       August 24, 2016 Email from Burgins to Defendant Williams

X.        August 31, 2016 Grievance

Y.        September 2, 2016 Memorandum from Frost to Defendant Williams

Z.        September 6, 2016 Email from Defendant Williams to Billingsley

AA.      October 13, 2016 Offender Disciplinary Report

BB.      October 22, 2016 Final Summary Report

CC.      January 24, 2017 Email from Defendant Williams to Neal

DD.      March 1, 2018 Request to Transfer

EE.      September 11, 2018 Request to Transfer

FF.      Kaskaskia College Transcripts

### III.    <u>UNDISPUTED MATERIAL FACTS</u>

1.      Plaintiff Calvin Grissom is a former an inmate of the Hill Correctional Center in Galesburg, Illinois. (Exhibit F – Williams Affidavit ¶ 10; Exhibit G – Billingsley Affidavit ¶ 18).

2.      Lake Land College is an Illinois community college providing education services to students seeking an associate degree or career training. (Exhibit F – Williams Affidavit ¶ 2; Exhibit G – Billingsley Affidavit ¶ 2).

3.      The College contracts with IDOC to provide educational services to inmates at correctional facilities throughout Illinois, including academic and vocational courses at

the Hill Correctional Center. (Exhibit F – Williams Affidavit ¶ 2; Exhibit G – Billingsley Affidavit ¶ 2). IDOC employee Warden Mark Williams (the "Warden") has been the Assistant Warden at the Hill Correctional Center since February 16, 2016. (Exhibit F – Williams Affidavit ¶ 6).

4.    Through the College's academic courses offered at the Hill Correctional Center, students may obtain credit toward an Associate in Liberal Studies ("ALS") degree ("ALS"). (Exhibit F – Williams Affidavit ¶ 4).

5.    The College also offers vocational training courses. (Exhibit F – Williams Affidavit ¶ 4; Exhibit G – Billingsley Affidavit ¶ 2).

6.    From June 2015 through October 2018, the College offered custodial maintenance, horticulture, and career technologies classes at the Hill Correctional Center. (Exhibit F – Williams Affidavit ¶ 31). Due to staffing unavailability, horticulture classes were only offered at the Hill Correctional Center from April 27, 2015, through January 25, 2016, and from August 21, 2017 through the present. (Exhibit F – Williams Affidavit ¶ 31).

7.    The College began offering automotive technology classes at the Hill Correctional Center on July 30, 2019. (Exhibit F – Williams Affidavit ¶ 32).

8.    Jennifer Billingsley is the Dean of Correctional Programs North at the College. (Exhibit F – Williams Affidavit ¶ 1; Exhibit G – Billingsley Affidavit ¶ 1).

9.    Dean Billingsley is responsible for overseeing the College's educational and vocational programs provided to inmates at twelve correctional facilities throughout the northern region of Illinois, including the Hill Correctional Center. (Exhibit G – Billingsley

Affidavit ¶ 3). She also is responsible for overseeing the curriculum for College programs at all correctional facilities in Illinois. (Exhibit G – Billingsley Affidavit ¶ 3).

10.     Dean Billingsley is the direct supervisor for all Associate Deans assigned to these correctional facilities. (Exhibit G – Billingsley Affidavit ¶ 3).

11.     Defendant Chris Williams is the Associate Dean of Correctional Programs at the Hill Correctional Center. (Exhibit F – Williams Affidavit ¶ 1; Exhibit G – Billingsley Affidavit ¶ 16).

12.     Defendant Williams is responsible for managing the College's programs at the Hill Correctional Center, including monitoring course offerings and scheduling, supervising instructional faculty and staff, and ensuring compliance with College and IDOC policies and regulations. (Exhibit F – Williams Affidavit ¶ 3; Exhibit G – Billingsley Affidavit ¶ 16).

13.     Like all College employees assigned to IDOC facilities, Defendant Williams also is responsible for observing offender conduct and preparing disciplinary reports. (Exhibit F – Williams Affidavit ¶ 3; Exhibit G – Billingsley Affidavit ¶ 16; Exhibit I – DEF 00063-00066).

14.     IDOC monitors and enforces the College's compliance with IDOC Directives and rules. (Exhibit F – Williams Affidavit ¶ 7; Exhibit G – Billingsley Affidavit ¶ 4).

15.     IDOC employs Educational Facility Administrators to complete periodic audits of the College's programs at IDOC correctional facilities. (Exhibit F – Williams Affidavit ¶ 7; Exhibit G – Billingsley Affidavit ¶ 4).

16.     From 2010 through 2018, former IDOC employee Becky Burgins ("EFA Burgins") was the Educational Facility Administrator assigned to monitor and audit the

College's programs at the Hill Correctional Center. (Exhibit F – Williams Affidavit ¶ 7; Exhibit G – Billingsley Affidavit ¶ 13).

**Relevant College and IDOC Rules**

17.     Lake Land College School Rules ("School Rules"), the Hill Correctional Center School Manual, IDOC Administrative Directives ("IDOC Directives"), and state and federal law govern the College's programs and operations at the Hill Correctional Center. (Exhibit A – Compl. ¶ 2; Exhibit B – Ans. ¶ 2; Exhibit F – Williams Affidavit ¶ 5; Exhibit G – Billingsley Affidavit ¶ 4).

18.     IDOC Directive 04.10.108 applies to student assessment and placement in educational and vocational programs at IDOC correctional facilities. (Exhibit J – DEF 000113-000117; Exhibit A – Compl. Ex. 3; Exhibit F – Williams Affidavit ¶ 8; Exhibit G – Billingsley Affidavit ¶ 5).

19.     Section G (7) of IDOC Directive 04.10.108 states that students who drop an educational or vocational program "shall not be permitted to re-enroll or enroll in another school assignment for a minimum of 45 calendar days" and "may request re-enrollment after 45 calendar days." (Exhibit J – DEF 000116; Exhibit A – Compl. Ex. 3).

20.     Paragraph 2 of the School Rules cites to Section G (7):

Students who drop an educational or vocational program or are removed for disciplinary reasons shall not be permitted to re-enroll in another school assignment for a minimum of 45 calendar days (AD 04.10.108).

(Exhibit K – DEF 00027).

21.     The Hill Correctional Center School Manual also incorporates Section G (7) but extends the suspension period to six months:

Per AD 04.10.108, G.7., "Students who drop an education or vocational program or are removed for disciplinary reasons, as determined by the EFA,

shall not be permitted to re-enroll or enroll in another school assignment for a minimum of 45 days…" Based on this AD, the minimum time period permitted for enrollment in a voluntary vocational or college academic assignment at the Hill Correctional Center is increased to 6 calendar months. As defined by the aforementioned policy, students seeking voluntary vocational/college assignments may request re-enrollment and be placed on a waitlist when this 6 month period has expired.

(Exhibit L – DEF 000107).

22.     The IDOC administrators at the Hill Correctional Center extended the suspension period beyond the "minimum of 45 calendar days" in Section G (7) to deter students from enrolling in a specific course for the purpose of associating with certain offenders and then dropping the course shortly thereafter. (Exhibit G – Billingsley Affidavit ¶ 6). The intent of the six-month suspension policy was to ensure that students on a course waiting list who actually wished to complete the course were not crowded out by students who only wished to enroll in the course temporarily. (Exhibit G – Billingsley Affidavit ¶ 6).

23.     Section G (12) of IDOC Directive 04.10.108 states students may not complete more than two post-secondary programs while incarcerated:

A student who has completed two post-secondary programs, certificate or degree, during his or her current incarceration within the Department shall not be enrolled in a third program unless: (a) Approved by the Chief Administrative Officer and Administrator of Adult Educational and Vocational Services; and (b) There is no waiting list in that respective program at the time of the request.

(Exhibit J – DEF 000117; Exhibit A – Compl. Ex. 3).

24.     Based on IDOC Directive 04.10.108 Section G (12), the College does not allow students to enroll in an educational program if the student has already met the educational goals of that program. (Exhibit F – Williams Affidavit ¶ 9; Exhibit G –

Billingsley Affidavit ¶ 7). Accordingly, the College does not allow students to enroll in the Associate Degree Program if they have already obtained an ALS degree from another educational institution. (Exhibit F – Williams Affidavit ¶ 9; Exhibit G – Billingsley Affidavit ¶ 7).

25.     The Illinois Unified Code of Corrections, 730 ILCS 5/3 *et seq.*, also addresses enrollment in educational programs during a person's incarceration at IDOC facilities. Section 3-6-2 states that an incarcerated person who participates and completes an educational program provided by or through IDOC and is awarded the number of credit hours required for the award or degree shall reimburse IDOC for the cost incurred in providing the education that qualifies for the award or degree. 730 ILCS 5/3-6-2(d). (Exhibit G – Billingsley Affidavit ¶ 11).

26.     The IDOC Notification of Educational Reimbursement Requirement form affirms these reimbursement requirements for students enrolled in the College through the Hill Correctional Center. (Exhibit P – DEF 00025)

27.     Former IDOC Procedure 08.800, "Inmate College Tuition Reimbursement," precludes any person who has an outstanding balance and has not made any payments toward tuition debt who is again placed in IDOC custody from enrolling in a post-secondary program. (Exhibit N – DEF 000112; Exhibit G – Billingsley Affidavit ¶ 12).

28.     The College applied IDOC Procedure 08.800 at all times relevant to Plaintiff's claims. (Exhibit G – Billingsley Affidavit ¶ 12).

**Plaintiff's Enrollment in the College's Associate Degree Program**

29.    Former College employee Chris Lehr was the Associate Dean assigned to the Hill Correctional Center beginning July 1, 2009, and she left this position on January 28, 2015. (Exhibit G – Billingsley Affidavit ¶ 14).

30.    Due to Lehr's unexpected departure, Dean Billingsley continued performing her regular duties as the Dean of Correctional Programs North while also performing many of Lehr's responsibilities at the Hill Correctional Center. (Exhibit G – Billingsley Affidavit ¶ 15).

31.    Plaintiff enrolled in the College's Associate Degree Program in June 2015. (Exhibit F – Williams Affidavit ¶ 10; Exhibit G – Billingsley Affidavit ¶ 18).

32.    Dean Billingsley was not aware whether Plaintiff had previously obtained an ALS degree before enrolling in the College's Associate Degree Program. (Exhibit G – Billingsley Affidavit ¶ 18).

33.    Upon his enrollment, Plaintiff received and signed the School Rules, the Hill Correctional Center Academic Rules for School/Library, and IDOC Notification of Educational Reimbursement Requirement. (Exhibit K – DEF 00027-00028; Exhibit Q – DEF 00026; Exhibit P – DEF 00025).

34.    Defendant Williams became the Associate Dean at the Hill Correctional Center on July 27, 2015. (Exhibit F – Williams Affidavit ¶ 1; Exhibit G – Billingsley Affidavit ¶ 16).

35.    Defendant Williams was not employed by the College in June 2015 and therefore did not review Plaintiff's transcripts prior to Plaintiff's enrollment in the Associate Degree Program.  (Exhibit F – Williams Affidavit ¶ 10).

**Plaintiff's Voluntary Mid-Semester Withdrawal**

36.    In October 2015, Plaintiff voluntarily dropped a course in the Associate Degree Program knowing that he may be suspended from the College's programs if he voluntarily withdrew from a course. (Exhibit R – DEF 0001; Exhibit E – Pl. Dep. Tr. 36: 11-18; 37: 2-12; 42: 12-19; 43:4-12; Exhibit A – Compl. ¶ 5; Exhibit B – Ans. ¶ 5).

37.    In accordance with the College and Hill Correctional Center procedures, Plaintiff completed and signed the Lake Land College Exit Interview Form, which warned: "Please understand that if this action is voluntary and/or disciplinary, you may be suspended from taking any classes." (Exhibit R – DEF 0001; Exhibit E – Pl. Dep. Tr. 47: 11-24).

38.    Plaintiff wrote on the Lake Land College Exit Interview Form that he withdrew from the course due to personal stress: "Dealing with high level of stress and depression due to pending custody court. I was not able to focus, I respect your final decision." (Exhibit R – DEF 0001).

39.    On December 2, 2015, Defendant Williams issued Plaintiff a memorandum regarding his withdrawal. (Exhibit A – Compl. Ex. 4; Exhibit S – DEF 000054).

40.    The memorandum informed Plaintiff that he would be suspended from all vocational or college academic programs for six months, beginning November 5, 2015, and that he may apply to the waitlist after the six-month period expired, explaining:

> When a student fails to complete his education for any reason, the entire school program is affected, including students who were unable to enroll in that student's place. Your decisions do not just affect you as an individual for this reason. The college program is determined to improve student retention and ensure students who enroll in coursework are truly invested in completing the course and pursuing a degree. Retention continues to be an important consideration in whether college academic programs should be retained. The Exit Interview Process has been established to improve

overall course completion. Students who are not serious or able to reach
their educational foals should not enroll in courses until they are certain of
their ability to complete.

(Exhibit S – DEF 000054; Exhibit A – Compl. Ex. 4).

41.     Plaintiff did not grieve his six-month suspension from IDOC school
assignments. (Exhibit E – Pl. Dep. Tr. 56: 3-5).

42.     Plaintiff acknowledges that the IDOC grievance procedure was at all times
available to him to file a grievance against any College or IDOC employee. (Exhibit E –
Pl. Dep. Tr. 226: 7-9; 223: 11-24; 224: 1-10).

43.     In or around May 2016, Plaintiff inquired about the eligibility requirements
for Roosevelt University, a program that was considering offering academic courses at
the Hill Correctional Center. (Exhibit F – Williams Affidavit ¶ 13).

44.     On May 27, 2016, IDOC Correctional Counselor John Frost emailed
Defendant Williams:

I met with Offender Grissom B46680 and he was concerned about getting
signed up for classes at Roosevelt when they start here at Hill. He stated
he was on a suspension with Lake Land due to dropping a class he didn't
need or shouldn't have taken and is concerned that this will affect his ability
to get signed up with Roosevelt. Any insight on this guy's situation would be
appreciated! Thank you!

(Exhibit T – DEF 0019).

45.     Defendant Williams responded to Frosts email: "Roosevelt is not here yet
and I will not have any say on who they take. You have to have you[r] ALS degree in
order for them to consider you." (Exhibit T – DEF 0018).

46.     Later that day, Frost entered a counseling summary to Plaintiff stating:
"Note to Offender: Per Our Conversation, Mr. Williams followed up with me and
responded: 'Roosevelt is not here yet and I will not have any say on who they take. You

have to have you ALS degree in order for them to consider you.'" (Exhibit U – Reply to Request p. 6).

47.     On June 1, 2016, Defendant Williams issued Plaintiff a letter stating his six-month suspension from IDOC school assignments had expired and therefore he was eligible to re-enroll in the College's programs:

> I received your request to be re-admitted into school. Your suspension ended on June 1, 2016 [.] You are now eligible to be put back on the college academic list. You will automatically be called back to register for school during the Fall Module 1 in August. Thank you for your interest in the Lake Land College program at Hill Correctional Center.

(Exhibit B – Ans. ¶ 6; Exhibit V – Compl. Ex. 5).

48.     Plaintiff re-enrolled in the College's Associate Degree Program shortly thereafter. (Exhibit F – Williams Affidavit ¶ 14).

**Discovery of Plaintiff's ALS Degree**

49.     After Plaintiff reenrolled in the Associate Degree Program, he continued to express interest in attending Roosevelt University. (Exhibit F – Williams Affidavit ¶ 15).

50.     Plaintiff informed Defendant Williams that he was eligible to enroll in Roosevelt University because he already had an ALS degree and asked for a copy of his college transcripts. (Exhibit F – Williams Affidavit ¶ 15).

51.     Defendant Williams reviewed Plaintiff's transcripts and confirmed that Plaintiff did in fact obtain an Associate in General Studies Degree from Kaskaskia Community College on July 30, 2004, during a previous IDOC incarceration. (Exhibit F – Williams Affidavit ¶ 16); (Exhibit FF – HCC 000521).

52.     Defendant Williams informed Dean Billingsley that Plaintiff already had an Associate in General Studies degree from Kaskaskia Community College, and Dean

Billingsley confirmed to Defendant Williams that Plaintiff should be removed from the Associate Degree Program. (Exhibit F – Williams Affidavit ¶ 16; Exhibit G – Billingsley Affidavit ¶ 19).

53.     In addition, Dean Billingsley determined that Plaintiff had not made any payments toward the tuition debt for the credits he earned toward his ALS degree while previously incarcerated and was therefore precluded from enrolling in the Associate Degree Program under IDOC Procedure 08.800. (Exhibit G – Billingsley Affidavit ¶ 20).

54.     In addition, in August 2016, EFA Burgins audited LLC's programs at the Hill Correctional Center and reviewed whether the students enrolled in the programs met eligibility requirements. (Exhibit F – Williams Affidavit ¶ 17; Exhibit W – DEF 0014).

55.     On August 24, 2016, EFA Burgins sent Defendant Williams an email stating Plaintiff already had an ALS degree. (Exhibit F – Williams Affidavit ¶ 17; Exhibit W – DEF 0014).

56.     Defendant Williams responded to Burgin's email: "I have call passed him over to inform and I will drop him. I will tell him he needs to wait on Roosevelt." (Exhibit F – Williams Affidavit ¶ 17; Exhibit W – DEF 0013).[1]

**Plaintiff's Removal from the Associate Degree Program**

57.     On August 26, 2016, Defendant Williams met with Plaintiff and informed him he was not eligible for the College's Associate Degree Program because he already had an ALS degree. (Exhibit A – Compl. ¶ 12; Exhibit B – Ans. ¶ 12; Exhibit H – DEF 00035-00037; Exhibit F – Williams Affidavit ¶ 18).

---

[1] A "call pass" allows an offender to leave his or her housing unit, assignment, or line movement to travel to a specific alternative destination.

58.     On August 31, 2016, Plaintiff filed a grievance regarding his removal from the College's Associate Degree Program alleging that an ALS degree from the College is not the same as his Associate in General Studies Degree from Kaskaskia Community College. (Exhibit X – HCC 000379-000380; Exhibit A – Compl. Ex. 7). In his grievance, Plaintiff complained that he did not receive a letter from the College explaining why he was removed from the Associate Degree Program. (Exhibit X – HCC 000379-000380; Exhibit A – Compl. Ex. 7).

59.     On September 2, 2016, IDOC Correctional Counselor Frost forwarded Plaintiff's Grievance to Defendant Williams and asked Defendant Williams to review the grievance and provide a brief response. (Exhibit F – Williams Affidavit ¶ 19; Exhibit Y – DEF 000121).

60.     On September 6, 2016, Defendant Williams emailed the Plaintiff's grievance to Dean Billingsley, stating: "The grievance is attached with his evaluation. I would appreciate any help you could provide. I informed the student that we could not offer him anything because he already has a[n] Associate Degree." (Exhibit F – Williams Affidavit ¶ 20; (Exhibit G – Billingsley Affidavit ¶ 22; Exhibit Z – DEF 000120).

61.     On September 7, 2016, Dean Billingsley emailed Defendant Williams the following draft response to Plaintiff's grievance:

> Offender Grissom was verbally informed in person that his participation in the Associate program at Hill CC ended once his associate degree earned at Kaskaskia College was identified from his Kaskaskia transcript.
>
> Correctional students cannot take classes indefinitely throughout their incarceration. Students who graduate from a post-secondary program cannot complete the same post-secondary program at another correctional site and college in order to continue to participate in programming in perpetuity. Once a student has reached their educational goal, equal

opportunity must be granted to other students who have not obtained this goal.

Every college student upon graduation must identify a new and different goal to improve their re-entry prospects, repeating the same goal does not improve re-entry.

(Exhibit F – Williams Affidavit ¶ 21; (Exhibit G – Billingsley Affidavit ¶ 23; Exhibit Z – DEF 000120).

62.     On September 8, 2016, IDOC Correctional Counselor Frost responded to Plaintiff's grievance by attaching Defendant Williams' written response. (Exhibit X – HCC 000381; Exhibit A – Compl. Ex. 8).

63.     Defendant Williams' response incorporated Dean Billingsley's September 7, 2016 draft response verbatim. (Exhibit F – Williams Affidavit ¶ 21; Exhibit X – HCC 000381; Exhibit A – Compl. Ex. 8; Exhibit Z – DEF 000120).

64.     On October 7, 2016, Defendant Williams met with Plaintiff again to address Plaintiff's concerns about his removal from the College's Associate Degree Program. (Exhibit F – Williams Affidavit ¶ 22). Defendant Williams explained to Plaintiff that he could no longer attend the Associate Degree Program because he already had an ALS degree. (Exhibit F – Williams Affidavit ¶ 22). Plaintiff argued that his Associate in General Studies Degree from Kaskaskia Community College is not the same degree as an Associate of Liberal Studies Degree from Lake Land College. (Exhibit F – Williams Affidavit ¶ 22).

65.     Plaintiff acknowledged during his deposition that he is not aware of any differences between his Associate in General Studies Degree from Kaskaskia Community College and an Associate of Liberal Studies Degree from Lake Land College beyond their titles. (Exhibit E – Pl. Dep. Tr. 133: 5-18).

**Plaintiff's October 13, 2016 Misconduct**

66.      On October 13, 2016, Plaintiff arrived in the foyer of the school building to attend the barbershop. (Exhibit F – Williams Affidavit ¶ 25).

67.      Defendant Williams directed students to remove their hats while inside the school building. (Exhibit F – Williams Affidavit ¶ 25).

68.      Defendant Williams also directed Plaintiff to remove his hat. (Exhibit F – Williams Affidavit ¶ 25; Exhibit E – Pl. Dep. Tr. 253: 18).

69.      Plaintiff admits he did not comply with Defendant Williams' directive to remove his hat. (Exhibit E – Pl. Dep. Tr. 256: 18-24; 257: 1-24; 258: 1-17).

70.      In addition, Plaintiff admits he told Defendant Williams that he was a civilian worker, not IDOC security, and that Plaintiff did not have to engage with him. (Exhibit E – Pl. Dep. Tr. 258: 21-24; 259: 1-12).

71.      Correctional Officer Powell directed Plaintiff to remove his hat, and Plaintiff complied. (Exhibit F – Williams Affidavit ¶ 26; Exhibit E – Pl. Dep. Tr. 261: 13-20).

72.      Defendant Williams asked Plaintiff for his identification and completed an Offender Disciplinary Report regarding Plaintiff's conduct. (Exhibit F – Williams Affidavit ¶ 27).

73.      Defendant Williams wrote the following observation on the Offender Disciplinary Report:

On 10-13-16 at approximately 8:30 am Associate Dean Williams asked orientation school students to remove their hats. All offenders complied except Mr. Grissom who yelled fuck you you ain't no police. Offender Grissom continued with have [sic] no respect unless you are security and I'm here for Barbershop. Associate Dean informed him that he still needs to remove his hat in the school building. Offender Grissom continued with you're going to have to write me a ticket. CO Powell instructed Grissom to remove his hat and he complied. Offender Grissom continued with I have

issue with you anyway since I am no longer take classes. Offender Grissom was positively identified by his state ID B46680.

(Exhibit AA – HCC 000373).

74.     Defendant Williams cited the following offenses on the Offender Disciplinary Report: "403-Disobeying a direct order, 304-insulance." (Exhibit AA – HCC 000373).

75.     On October 22, 2016, the IDOC Program Committee issued a Final Summary Report finding Plaintiff guilty of Offense 304 (Insolence) and Offense 403, stating:

Educator Williams reports all offenders were given a direct order to remove their hats, when entering school, offender Grissom did not comply. Written report reflects offender Grissom told Educator Williams: "I have no respect unless you are security." Officer Powell confirmed that offender Grissom did not comply with Mr. Williams [sic] direct order.

(Exhibit BB – HCC 000372).

76.     Plaintiff did not grieve the Offender Disciplinary Report. (Exhibit E – Pl. Dep. Tr. 265: 5-9; 272: 8-14).

**Additional Programs and Courses Offered to Plaintiff**

77.     On January 24, 2017, Defendant Williams emailed IDOC employee Lance Neal regarding recommendations for a teaching assistant position and suggested that Neal contact Plaintiff, stating Plaintiff had requested to be a teaching assistant before. (Exhibit F – Williams Affidavit ¶ 28; Exhibit CC – DEF 0016).

78.     On March 1, 2018, Plaintiff submitted a Request to Transfer form asking that he be transferred to a correctional facility that offers an automotive technology or culinary program. (Exhibit DD – HCC 000159).

79.     Requests to Transfer forms are processed by the IDOC Transfer Coordinators Office. (Exhibit G – Billingsley Affidavit ¶ 25). College employees neither

receive nor are responsible for reviewing any such requests. (Exhibit G – Billingsley Affidavit ¶ 25).

80. The College did not offer automotive technology or culinary courses at the Hill Correctional Center in March 2018. (Exhibit F – Williams Affidavit ¶ 31).

81. Plaintiff was informed that the College would soon begin offering automotive technology classes at the Hill Correctional Center and that the College was seeking an instructor for the new program. (Exhibit F – Williams Affidavit ¶ 32; Exhibit E – Pl. Dep. Tr. 123: 23-24; 124: 1-7; 174: 21-24; 175: 1-5; 180: 22-24; 181: 1-10).

82. Defendant Williams agreed that Plaintiff would be in the first class of students in the automotive technology classes once the program began. (Exhibit F – Williams Affidavit ¶ 32; Exhibit E – Pl. Dep. Tr. 18: 12-21).

83. On September 11, 2018, Plaintiff issued a "Request to Transfer" form to the IDOC Transfer Coordinators Office asking that he be transferred to a correctional facility that offers a welding program. (Exhibit EE – HCC 000142).

84. The College did not offer welding courses at the Hill Correctional Center in September 2018. (Exhibit F – Williams Affidavit ¶ 31).

85. Plaintiff did not file any grievances about any alleged attempts to enroll in educational or vocational courses from August 26, 2016, to October 21, 2018. (Exhibit E – Pl. Dep. Tr. 166: 1-4; 213: 14-20).

86. In October 2018, Plaintiff was transferred to the East Moline Correctional Facility in East Moline, Illinois. (Exhibit F – Williams Affidavit ¶ 32; Exhibit G – Billingsley Affidavit ¶ 26).

## IV.  **LEGAL STANDARD**

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists if no reasonable jury could find for the nonmoving party. *Van Antwerp v. City of Peoria,* 627 F.3d 295, 297 (7th Cir. 2010). To oppose a motion for summary judgment, the nonmoving party "must do more than raise a 'metaphysical doubt' as to the material facts," but must come forward with specific facts showing that there is a genuine issue for trial. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997).

## V.  **ARGUMENT**

Plaintiff alleges that Defendant Williams retaliated against him for sending a request slip and two letters to the Warden regarding his October 2015 six-month suspension from school assignments at IDOC. Specifically, Plaintiff alleges Defendant Williams retaliated against him by: (1) removing Plaintiff from the Associate Degree Program on August 26, 2016; (2) issuing Plaintiff a disciplinary ticket on October 13, 2016; and (3) denying Plaintiff enrollment in vocational and academic programs from August 26, 2016, to October 21, 2018.

Plaintiff failed to exhaust his administrative remedies regarding his retaliation claims and is therefore precluded from brining these claims here. Moreover, even if Plaintiff did exhaust his administrative remedies, his allegations of First Amendment retaliation are based solely on speculation and are clearly contrary to record. For these reasons, Plaintiff's claims against Defendant Williams should be summarily dismissed.

A. <u>**Plaintiff Failed to Exhaust His Administrative Remedies.**</u>

Exhaustion of administrative remedies "is a condition precedent to suit in federal court." *Perez v. Wisconsin Dep't of Corr.,* 182 F.3d 532, 535 (7th Cir. 1999). The Prison Litigation Reform Act ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. §1997e(a). The Seventh Circuit takes a "'strict compliance approach to exhaustion,' meaning that the prisoner must properly use the prison's grievance system." *Santiago v. Anderson*, 496 Fed. Appx. 630, 636 (7th Cir. 2012) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The IDOC grievance procedure includes several steps prisoners must take to exhaust administrative remedies. 20 Ill. Admin. Code §504.810. A prisoner first must seek the assistance from an inmate counselor. 20 Ill. Admin. Code §504.810. If the prisoner is not satisfied with the counselor's resolution of the complaint, he may then submit a formal grievance to the prison's grievance officer. 20 Ill. Admin. Code § 504.810. The grievance officer then reviews the grievance and forwards his recommendation to the warden. 20 Ill. Admin. Code § 504.830. If the warden denies the prisoner's grievance, the prisoner has 30 days to appeal the warden's decision to the Director, who then may order a hearing before the Administrative Review Board. 20 Ill. Admin. Code §504.850.

> 1. **Plaintiff failed to exhaust his administrative remedies regarding any First Amendment retaliation claims arising out of his removal from the Associate Degree Program.**

The Illinois Administrative Code requires that a grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where

and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810. To comply with the PLRA's exhaustion mandate, the Seventh Circuit has held that an inmate must give enough information to provide correctional officials "a fair opportunity to address his complaint." *Rodriguez v. Judkins*, 2020 WL 6273480, at 4 (N.D. Ill. 2020).

In *Price v. Friedrich*, Case No. 19-24858; 16 F. App'x 8, *9 (7th Cir. 2020), for example, prisoner Roland Price alleged that prison official Phillip Friedrich destroyed his legal materials in retaliation for Price's prior grievance against another prison official. Price then filed a grievance against Friedrich regarding the destruction of his legal materials but did not allege that Friedrich retaliated against Price for his prior grievance against Friedrich's colleague. *Id.* at *10. The district court dismissed Price's First Amendment retaliation claim, holding that because Price did not clearly identify the issue of retaliation in his grievances, "the complaint examiner had no opportunity to investigate and determine the facts of his retaliation claim." *Id.*

On appeal, Price argued that the district court held him to a "heightened pleading standard" because "retaliation is not a factual detail; rather it is a legal theory or conclusion." *Id.* The Seventh Circuit disagreed and upheld the dismissal, reasoning that, for purposes of exhaustion, "the Prison Litigation Reform Act requires prisoners to provide a prison with 'notice of, and an opportunity to correct, a problem.'" *Id.* (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020) and citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "Price failed to apprise the complaint examiner of his claim by first mentioning it in any of his underlying grievances." *Id. See also Harris v. Iverson*, 751 Fed. Appx. 945 (7th Cir. 2019), reh'g denied (Mar. 13, 2019) (dismissing a prisoner's claim that he was

terminated from his kitchen position in retaliation for First Amendment protected activity where the prisoner's initial grievance only complained that his termination was not warranted but did not allege retaliation).

Similarly here, Plaintiff's August 31, 2018 grievance did not allege that his removal from the College's Associate Degree Program was in retaliation for any First Amendment protected activity. The grievance made no mention of Plaintiff's alleged request slips or letters to the Warden regarding his six-month suspension. *See Williams v. Baldwin*, 239 F. Supp. 3d 1084, 1091 (N.D. Ill. 2017) ("There is nothing in [IDOC grievance] procedures that would allow a prisoner to write down only some of his complaints on the grievance form, and then provide the remainder of his complaints by reference to a previous letter."). Plaintiff instead complained that he had not received a letter from the College explaining why he was removed from the Associate Degree Program. (Exhibit X – HCC 000379-000380; Exhibit A – Compl. Ex. 7). Under "Relief Requested," Plaintiff wrote:

> Please allow me to have an equal opportunity at rehabilitation through the use of education. I would like a professional letter from Lake Land College explaining the reason for removing me from school.

(Exhibit X – HCC 000379-000380; Exhibit A – Compl. Ex. 7).

In response to Plaintiff's request, Defendant Williams provided a written explanation for his removal, with assistance from Dean Billingsley, stating that Plaintiff's participation in the Associate Degree Program ended "once his associate degree earned at Kaskaskia College was identified from his Kaskaskia transcripts" and "[s]tudents who graduate from a post-secondary program cannot complete the same post-secondary program at another correctional site and college in order to continue to participate in programming in perpetuity." (Exhibit F – Williams Affidavit ¶ 21; Exhibit G – Billingsley

Affidavit ¶ 23; Exhibit X – HCC 000381; Exhibit A – Compl. Ex. 8). Correctional Counselor Frost attached this statement to the grievance response, thus granting Plaintiff's request for an explanation. (Exhibit X – HCC 000381; Exhibit A – Compl. Ex. 8).

Defendant Williams did not receive "notice of, and an opportunity to correct, a problem" regarding any claims of retaliation as required by the PLRA before Plaintiff filed suit. 42 U.S.C.A. §1997e(a). Plaintiff's grievance failed to provide Defendant Williams with notice or opportunity to address any claims that Plaintiff's removal was in retaliation for his alleged request slips and letters to the Warden regarding his six-month suspension, thus preventing him from having a fair opportunity to address these claims "on the merits." *See Williams*, 239 F. Supp. 3d at 1093 (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Instead, Plaintiff raised these allegations two and a half years later in his March 26, 2019 Complaint. (Exhibit A – Compl. ¶ 16). Plaintiff's failure to grieve his First Amendment retaliation claims requires dismissal of his complaint.

>        **2.    Plaintiff failed to exhaust his administrative remedies regarding the disciplinary ticket and his alleged attempts to enroll in vocational or academic courses.**

Plaintiff also failed to exhaust his administrative remedies regarding his claims that Defendant Williams retaliated against him by issuing the October 13, 2016 disciplinary ticket and denying him enrollment in academic and vocational programs from August 26, 2016, to October 21, 2018. Plaintiff admits that he did not grieve the October 13, 2016 disciplinary ticket. (Exhibit E – Pl. Dep. Tr. 265: 5-9; 272: 8-14). Plaintiff also admits that he did not grieve any of his alleged attempts to enroll in vocational or academic courses from August 26, 2016, to October 21, 2018. (Exhibit E – Pl. Dep. Tr. 213: 14-20).

Plaintiff asserts that he did not pursue the IDOC grievance procedure because IDOC could not order the College to enroll him in its programs or award monetary damages. (Exhibit E – Pl. Dep. Tr. 168: 18-23; 169: 1-22; 223: 11-24; 224: 1-10; 266: 7-16). Plaintiff instead chose to send meeting requests to Dean Billingsley and issue written and verbal requests to the Warden. (Exhibit E – Pl. Dep. Tr. 170: 6-23). However, sending requests or letters to prison officials is insufficient to comply with the IDOC grievance procedure. *See Rocquemore v. Shearing*, 2015 WL 1326115, at 5 (S.D. Ill. Mar. 20, 2015) ("Although Plaintiff complained of Defendants' medical treatment in a letter addressed to Dr. Shicker, this is not sufficient to establish exhaustion pursuant to the Illinois Administrative Code."); *Sykes v. Feinerman*, 2010 WL 6001599, at 3 (S.D. Ill. Oct. 5, 2010) ("[L]etters [to the warden] are not on IDOC grievance forms, and do not constitute grievances within the procedures set forth in § 504.800 *et seq.*").

Moreover, Plaintiff is not excused from complying with the IDOC grievance procedure, even if he believes IDOC does not have the authority to grant his preferred remedy. The Seventh Circuit has clearly addressed this argument and held a prisoner "must exhaust administrative remedies even if he believes that the process is futile or requests relief that the administrative body does not have power to grant." *Canady v. Davis*, 376 F. App'x 625, 626 (7th Cir. 2010). "[C]ourts will not try to sift futile from effective remedies for this purpose; instead of asking judges to guess, prisoners must give it a go." *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

It is therefore undisputed that Plaintiff failed to exhaust IDOC grievance procedure requirements regarding the October 13, 2016 disciplinary ticket and any alleged attempts to enroll in vocational or academic courses from August 26, 2016, to October 21, 2018. As such, Plaintiff's First Amendment retaliation claims based on the disciplinary ticket and alleged attempts to enroll in vocational or academic courses must be dismissed. !

**B.**    **No Reasonable Jury Could Find Defendant Williams Retaliated Against Plaintiff for First Amendment Protected Activity.**

To survive summary judgment, Plaintiff must show there exists genuine issues of material fact that: (1) he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). While Plaintiff is entitled to reasonable inferences in his favor, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Plaintiff has failed to provide evidence for his First Amendment retaliation claims against Defendant Williams beyond mere speculation.

**1.**    **Plaintiff has failed to show Defendant Williams was aware of any First Amendment protected activity.**

To succeed on his First Amendment retaliation claims, Plaintiff must first "show that the person who decided to impose the adverse action knew of the protected conduct." *Id.*, quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). *See Manuel v. Nalley*, 15-CV-783-SMY-RJD, 2017 WL 6593703, at *3 (S.D. Ill. Dec. 26, 2017), aff'd, 966 F.3d 678 (7th Cir. 2020) ("there can be no adverse, retaliatory action without knowledge of protected conduct"). Accordingly, Plaintiff must show that Defendant Williams knew about the alleged protected activity at issue.

Plaintiff presumes that all of Defendant Williams' alleged actions against him were in retaliation for a request slip and two letters he claims he submitted to the Warden about his six-month suspension. (Exhibit E – Pl. Dep. Tr. 128: 19-24; 129: 1-12; 196: 4-22). However, Plaintiff admits he has no evidence that Defendant Williams knew of the request slip or the first letter submitted to the Warden. (Exhibit E – Pl. Dep. Tr. 85: 12-21). Plaintiff only speculates that Defendant Warden received these documents based on Defendant Williams' June 1, 2016 memorandum stating Plaintiff would be reenrolled in the Associate Degree Program. (Exhibit E – Pl. Dep. Tr. 90: 6-23). Plaintiff acknowledged that the Defendant Williams could have been verbally informed of Plaintiff's request to reenroll in the Associate Degree Program. (Exhibit E – Pl. Dep. Tr. 91: 24; 92: 1-12).

Plaintiff's only evidence that Defendant Williams knew of the second letter to the Warden is his claim that he saw "50%" of the letter sitting on Defendant Williams' desk when he met with Defendant Williams in August 2016. (Exhibit E – Pl. Dep. Tr. 110: 1-8). Plaintiff does not have any evidence that Defendant Williams read the letter, nor does he allege that Defendant Williams ever mentioned the letter during their meeting. (Exhibit E – Pl. Dep. Tr. 125: 12-21; 126: 9-17). Instead, Plaintiff relies on inadmissible hearsay statements by the Warden in an attempt to support this claim. (Exhibit E – Pl. Dep. Tr. 126: 18-24; 127: 1-19).

Even assuming Defendant Williams was aware of Plaintiff's alleged request slip and letters to the Warden, Plaintiff has provided insufficient evidence to show that they amounted to anything more than a personal gripe, not a matter of public concern with First Amendment protection. Plaintiff acknowledges he only wrote to the Warden in an attempt to expunge his own suspension and ensure that he would not be suspended for

six months if he voluntarily dropped another course. (Exhibit E – Pl. Dep. Tr. 86-88).[2] *See McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005) (prisoner's questions concerning a correctional officer's "personal policies" about lay-in pay was a personal matter, not a matter of public concern); *Snider v. Belvidere Township,* 216 F.3d 616, 620 (7th Cir. 2000) (comments about perceived salary disparity *vis-á-vis* other employees is a personal issue, not public concern). Therefore, Plaintiff cannot show that Defendant Williams was aware of any conduct protected activity to support his First Amendment retaliation claim.

### 2. Plaintiff has failed to show Defendant Williams took any adverse action based on retaliatory motive.

Additionally, there is no genuine issue of material fact tying Plaintiff's alleged protected activity to an adverse action by Defendant Williams. *Thomas v. Hahn*, 12-1302-JBM-JAG, 2014 WL 887144, at *3 (C.D. Ill. Mar. 6, 2014). Speculation alone cannot create an inference of causation to survive summary judgment. *See Soto v. Bertrand*, 328 Fed. Appx. 331, 333 (7th Cir. 2009), citing *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 544 F.3d 752, 757 (7th Cir. 2008); *Manuel v. Nalley*, 966 F.3d 678 (7th Cir. 2020).

Plaintiff alleges Defendant Williams took three adverse actions based on retaliation. He claims that Defendant Williams: (1) removed him from the Associate Degree Program on August 26, 2016; (2) issued him a disciplinary ticket on October 13, 2016; and (3) and denied him enrollment in academic and vocational programs from

---

[2] Even if Plaintiff's alleged request slips and letters amounted to First Amendment protected activity, Defendant Williams would be entitled to qualified immunity from any such claim. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (a government official is entitled to qualified immunity when the conduct at issue "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

August 26, 2016, to October 21, 2018. However, the record shows that Defendant Williams did not take two of these adverse actions alleged. Additionally, Plaintiff has failed to provide any evidence of a causal connection between Defendant Williams' alleged actions and any First Amendment protected activity.

First, the record clearly shows that Dean Billingsley, not Defendant Williams, determined Plaintiff should be removed from the Associate Degree Program. In response to Plaintiff's requests to enroll in Roosevelt University's bachelor's degree program, Defendant Williams reviewed Plaintiff's transcripts and learned that Plaintiff previously obtained an ALS degree from Kaskaskia Community College. (Exhibit F – Williams Affidavit ¶ 16; Exhibit G – Billingsley Affidavit ¶ 19). EFA Burgins also audited the educational programs at Hill Correctional Center in August 2016 and alerted Defendant Williams that Plaintiff already had an ALS degree. (Exhibit G – Billingsley Affidavit ¶ 17; Exhibit W – DEF 0014).  Defendant Williams notified Dean Billingsley, who informed him that Plaintiff should be removed from the Associate Degree Program. (Exhibit F – Williams Affidavit ¶ 16; Exhibit G – Billingsley Affidavit ¶ 19, 21). It is therefore clear that the decision to remove Plaintiff from the Associate Degree Program was made by Dean Billingsley, not Defendant Williams, and was completely unrelated to any alleged protected activity.

Plaintiff only speculates that he was removed from the Associate Degree Program by Defendant Williams for retaliatory reasons because Defendant Williams responded to his August 31, 2016 grievance. (Exhibit E – Pl. Dep. Tr. 296: 10-24; 297: 1-24). Plaintiff theorizes that Defendant Williams blocked Dean Billingsley from the grievance process in order to hide his actions from his supervisor. (Exhibit E – Pl. Dep. Tr. 129: 8-12; 275:

16-24; 276: 1-5; Exhibit C – Resp. to Interrog. 10; ECF No. 7-1, p. 40. However, Dean Billingsley was thoroughly involved in the grievance process. Dean Billingsley herself drafted the written statement that was attached to the grievance response. (Exhibit F – Williams Affidavit ¶ 21; Exhibit G – Billingsley Affidavit ¶ 23; Exhibit Z – DEF 000120). Although Plaintiff claims he submitted request slips to Defendant Williams seeking a meeting with Dean Billingsley, there is no evidence that Defendant Williams received these requests or failed to inform Dean Billingsley. Even assuming Defendant Williams received them, the mere fact that Defendant Williams either responded or failed to respond to Plaintiff's requests and inquiries is not sufficient to establish that he did so in retaliation. *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 886-87 (S.D. Ill. 2009). [3]

In any event, Plaintiff's removal from the Associate Degree Program would have happened regardless of any alleged retaliatory motive. *See Mays v. Springborn*, 719 F.3d 631, 634–35 (7th Cir. 2013) ("A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. 'the harm would have occurred anyway.'") Based on IDOC Directive 04.10.108 Section (G) (12), the College does not allow students to enroll in an educational program if they have already met the educational goals of that program. (Exhibit F – Williams Affidavit ¶ 9; Exhibit G – Billingsley Affidavit ¶ 7; Exhibit M – DEF 000111). Plaintiff does not dispute

---

[3] To the extent Plaintiff attempts to imply that Defendant disliked him or had a history of animosity towards him or other offenders, any such inference is insufficient to support his retaliation claim. *See Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 884, 888 (S.D. Ill. 2009) ("[I]f Reardon's reason for not formally responding to Plaintiff's grievances was merely that Reardon 'disliked' Plaintiff, no constitutional violation occurred"); *Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013) ("[E]ven assuming plaintiff's co-worker made a false report that plaintiff had used slurs, a clear record of animosity between them is insufficient to establish discriminatory animus.").

the College's rule precluding inmates from enrolling in a postsecondary program if they have already completed the same postsecondary program at another correctional facility, and he does not know whether there is any difference between a Kaskaskia Community College Associate in General Studies Degree and a Lake Land College Associate in Liberal Studies Degree other than their titles. (Exhibit E – Pl. Dep. Tr. 133: 5-18). Dean Moreover, Billingsley confirmed that IDOC Procedure 08.800 precluded Plaintiff from enrolling in any post-secondary programs because he had not made any payments toward his outstanding tuition debt for IDOC costs incurred in obtaining his prior ALS Degree. (Exhibit G – Billingsley Affidavit ¶ 20; Exhibit O – DEF 000061).

The College applied IDOC Directive 04.10.108 Section (G) (12) to Plaintiff in the same manner it has for other students who have an ALS Degree. In January 2016, for example, a student at the Dixon Correctional Center sought to enroll in the College's Associate Degree Program even though he already had an ALS degree. (Exhibit M – DEF 000111; Exhibit G – Billingsley Affidavit ¶ 8). The student argued that he only had one post-secondary degree and therefore IDOC Directive 04.10.108 Section G (12) did not preclude him from enrolling in the College's Associate Degree Program. (Exhibit M – DEF 000111; Exhibit G – Billingsley Affidavit ¶ 8). Dean Billingsley reviewed the Dixon Correctional Center student's request and concluded that, based on the intent of Section G (12), the student was not eligible for the Associate Degree Program. (Exhibit M – DEF 000111; Exhibit G – Billingsley Affidavit ¶ 8).

On January 6, 2016, Dean Billingsley notified all Associate Deans assigned to IDOC facilities of this decision via email and directed them to respond to any such requests by stating:

All college programs have a determined end, whether it ends with a certificate or degree. Once a student has met the requirements and reached their educational goal, students may not continue enrollment in the program. The goal of the college academic program is the Associate of Liberal Studies. All students must be actively engaged in reaching this goal, and once a student has reached this goal, they may not continue to participate in college academic classes. This basic enrollment practice is the same for vocational students who may not continue to participate in Culinary Arts or other programs after completing a certificate. The intent of 04.10.108 is to ensure more students have access to a college education by setting a degree/certificate limit. Allowing students to continue enrollment after completion violates the intent of the A.D.

(Exhibit M – DEF 000111; Exhibit G – Billingsley Affidavit ¶ 9).[4] Therefore, the College established this rule even before Plaintiff sent the alleged request slip and letters to the Warden. Plaintiff cannot show that his alleged protected activity was the but-for cause of his removal from the Associate Degree Program. *See Nieves v. Barlett*, 139 S. Ct. 1715, 1722, (2019) (cited by *Winston v. Fuchs*, 837 Fed. Appx. 402, 404-405 (7th Cir. 2020)).

Next, Plaintiff cannot establish a causal connection between the October 13, 2016 disciplinary ticket and any alleged protected activity. Plaintiff alleges Defendant Williams fabricated the disciplinary ticket, yet he admits that he engaged in the misconduct cited within it. *See Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (no First Amendment violation occurs if, regardless of the retaliatory motive, the defendants would have punished a prisoner for violating legitimate prison rules).

The October 13, 2016 disciplinary ticket states that Plaintiff violated Offense 304 (Insolence) and Offense 403 (Disobeying a Direct Order), both of which were ultimately upheld by the IDOC Program Committee. (Exhibit AA – HCC 000373; Exhibit BB – HCC

---

[4] On January 7, 2016, Dixon Correctional Center Associate Dean Keith Stevenson issued a memorandum to the student informing him that he may not enroll in the College's Associate Degree Program because he already had an ALS degree. (Exhibit N – DEF 000112; Exhibit G – Billingsley Affidavit ¶ 10).

000372). Plaintiff admits that he "completely disregarded" Defendant Williams' directive to remove his hat while in the school building. (Exhibit E – Pl. Dep. Tr. 258: 15-17). Plaintiff also admits that he told Defendant Williams he was a civilian worker, not security, and therefore Plaintiff did not have to "engage [him] in any type of conversation about anything." (Exhibit E – Pl. Dep. Tr. 258: 21-24; 259: 1). Plaintiff cannot show the disciplinary report was based on anything other than his own admitted violations of legitimate prison rules.

Finally, Plaintiff cannot establish that Defendant Williams refused to enroll him in any vocational or academic courses from August 26, 2016, to October 21, 2018. To the contrary, Plaintiff admits Defendant Williams agreed to place him in the first class of students in automotive technology classes through the College's vocational program once the automotive technology program began. (Exhibit E – Pl. Dep. Tr. 213: 14-20). Plaintiff only alleges that he submitted two request slips to Defendant Williams between September and November 2016 seeking to join waiting lists for a horticulture or an academic course and did not receive a response. (Exhibit C – Resp. to Interrog. 10, 11). However, Plaintiff has no knowledge whether Defendant Williams received these requests, and he acknowledges there is "always a possibility that when you send a request slip, it may not make it where you intend to." (Exhibit E – Pl. Dep. Tr. 173: 24; 174: 2). Even if Defendant Williams did receive these alleged requests, Plaintiff has presented no evidence of retaliatory motive.

There is simply no evidence in the record that Defendant Williams took any adverse action against Plaintiff in retaliation for First Amendment activity. Instead, the record shows that Defendant Williams acted favorably toward Plaintiff. On June 1, 2016,

Defendant Williams reinstated Plaintiff to the Associate Degree Program following his suspension. (Exhibit F – Williams Affidavit ¶ 14; Exhibit V – Compl. Ex. 5). He then helped Plaintiff review the eligibility requirements for Roosevelt University's bachelor's degree program. (Exhibit F – Williams Affidavit ¶ 15, 16). Defendant Williams continued to help Plaintiff pursue educational opportunities after learning he was not eligible for the Associate Degree Program. In January 2017, Defendant Williams recommended Plaintiff for a teaching assistant position. (Exhibit F – Williams Affidavit ¶ 28; Exhibit CC – DEF 0016). He also agreed to enroll Plaintiff in the first class of automotive technology students through the College's vocational program. (Exhibit F – Williams Affidavit ¶ 32; Exhibit E – Pl. Dep. Tr. 213: 14-20). However, Plaintiff transferred to another correctional facility before the automotive technology program began. (Exhibit F – Williams Affidavit ¶ 32).

It is clear from the record that no reasonable jury could find Defendant Williams retaliated against Plaintiff based on any First Amendment protected activity. Therefore, Plaintiff's claims should be summarily dismissed.

## VI.   CONCLUSION

WHEREFORE, Defendant Williams respectfully requests that this Honorable Court grant this Motion for Summary Judgment, enter judgment in his favor and against Plaintiff, and grant such other and further relief as is just and appropriate.

Respectfully submitted,

**DEFENDANT CHRISTOPHER WILLIAMS**

By:   /s/ Jessica A. Milligan
　　　Jessica A. Milligan
　　　One of His Attorneys

Frank B. Garrett III (6192555)
fgarrett@robbins-schwartz.com
Jessica A. Milligan (6321679)
jmilligan@robbins-schwartz.com
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
55 West Monroe Street, Suite 800
Chicago, IL 60603
312.332.7760
312.332.7768 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system on this 19th day of April, 2021, pursuant to Fed. R. Civ. P. 5(b).  I further certify that I placed a copy of this **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** via first class mail.

Calvin A.  Grissom
B46680
EAST MOLINE
East Moline Correctional Center
Inmate Mail/Parcels
100 Hillcrest Rd
East Moline, IL 61244

By:   /s/ Jessica A. Milligan
      Jessica A. Milligan


Frank B. Garrett III (6192555)
fgarrett@robbins-schwartz.com
Jessica A. Milligan (6321679)
jmilligan@robbins-schwartz.com
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
55 West Monroe Street, Suite 800
Chicago, IL 60603
312.332.7760
312.332.7768 – Facsimile